Next case on the call of the docket today is case number 110724, Janet Bell individually, etc. versus Jeffrey Hutsell, if that's how it's pronounced, at agenda number nine. Counsel, Mr. Ryan. Good morning, Justices. Thank you. My name is David Ryan. I represent the appellants and the defendants in the underlying trial court matter. Jeffrey and Sarah Hutsell. This is a social host liability case. And the issue which the Hutsells bring before the court is whether under the facts alleged in the plaintiff's complaint, the Hutsells were social hosts under Illinois law and therefore immune from liability for the cause of action alleged by the plaintiff. The appellate court found that the Hutsells were not social hosts and that therefore the plaintiff's cause of action against the Hutsells for their alleged voluntary undertaking to supervise their son's party and prevent alcohol drinking could proceed. The only basis for the appellate court's finding that the Hutsells were not social hosts and therefore not immune was because the Hutsells did not supply or furnish the alcohol that was supplied at the party. We believe the appellate court narrowest of definitions of who is a social host is wrong and is based on an incorrect interpretation of more than 100 years of Illinois law in this area of alcohol related liability. We found four appellate court cases in which the defendants were found to be social hosts where they did not supply the alcohol. The first is Richardson v. Ansco, 3rd District 1979 case where the plaintiff alleged that an employer permitted an employee to drink at a job site and thereafter took a co-worker home and crashed. There was no allegation that the employer supplied or furnished the alcohol. The employer was alleged to have simply allowed the drinking. The appellate court still found no liability because the only remedy for injuries resulting from the intoxication was under the Dram Shop Act which only applied to the commercial suppliers of alcohol. A second case where the defendants did not supply the alcohol was Coulter v. Swearingen, 3rd District 1983 where the plaintiff alleged that the parents of a minor negligently stored the alcohol so that it was accessible to the minor who gave it to another minor. There were no allegations in Coulter that the parents furnished or supplied the alcohol. The appellate court said that the parents weren't liable because they were social hosts. In denying the plaintiff's attempt to extend the liability to the defendants in that case, the court said any extension for damages arising from intoxication must come from the legislature and not the courts. A third case is Helt v. Bree, 1st District 1983. The plaintiff alleged that the parents were negligent in allowing their son to sell alcohol at the parents' home. The plaintiff also alleged that the parents negligently permitted a guest to become intoxicated. There was no allegation that the parents supplied the alcohol. They owned the home where their son had the alcohol and sold it. Again, the appellate court found that the parents who didn't supply the alcohol were social hosts and immune from liability for the alcohol-related injury. Zamir v. Linderman was a 1st District 1985 court case. The plaintiff, a minor, alleged that the defendant homeowners willfully and wantonly allowed that minor to drink alcohol, become intoxicated at the parents' home, and then slipped on a rug and was injured. There were no allegations that the parents supplied the alcohol. The allegations were the parents allowed the minor to drink the alcohol. The court found that the parents were social hosts and not liable for the intoxication-related injury. One more case which is instructive is Miller v. Moran, 4th District 1981. In Miller, the defendants were hosts of a fish fry, and the plaintiff alleged that the defendants served or supervised the service of alcohol. The court found that there is no possible liability for these hosts for either the service of the alcohol or the supervision of the service of the alcohol. The Miller court also cited the Richardson case, which I just mentioned, and noted that in Richardson, the defendants did not serve the alcohol. They merely allowed the intoxication to occur, which the plaintiff alleged was negligent, but the court found that there was no duty under the social host law. So all of these cases that I just cited arise out of intoxication of a guest at someone's home or someone's party. They all include allegations of negligence in allowing a guest to become intoxicated or failing to prevent a guest or an employee from becoming intoxicated. All of the cases were dismissed by the appellate court under the social host immunity doctrine. None of the courts distinguished between supplying the alcohol, allowing the alcohol, preventing the alcohol, or negligently storing the alcohol. They said that because it was alcohol-related, it was preempted by legislation, which does not provide for a civil cause of action. So in today's case, we have an allegation against my clients that they breached their duty to prevent the intoxication of Mr. Bell. But based on the case law that I just described, Richardson, Coulter, Heldt, Samir, and Miller, the Hutzels were just as much social hosts as any of the defendants in those cases. They're not subject to liability for this cause of action brought by the plaintiff. Now, the plaintiff appellee argues that the complaint should stand because it's not based on, quote, furnishing of alcohol. He cites Simmons v. Homadas, 2010 case by the Supreme Court, and Wachlich v. Mraz, 2003 Supreme Court case, in support of his argument. But in both Simmons and Wachlich, the duties that arose in those cases arose after the intoxication had occurred. In both of those cases, you could take alcohol out of the picture and still arrive at the same result. In either of those cases, Simmons or Wachlich, the guest could have suffered a stroke, could have suffered a seizure, could have taken drugs before arriving, and become incapacitated in the same way. Strokes can sometimes look like intoxication. Seizures can sometimes look like intoxication. The negligence in those cases arose out of the way the defendants handled the incapacitated guest. In Simmons, the court said, on stage's duty does not arise from providing alcohol to Homadas, the defendant. The duty under the facts alleged arose later, following a series of actions taken by club employees in response to discovering Homadas vomiting in the men's room. At that point, employees allegedly ejected Homadas and his friend Chiarella from the club, ordered the parking attendant to bring his car around to the front door, and assisted Homadas into the vehicle, directing him then to leave. In Wachlich, the court stated, the liability of defendants, if any, is not contingent on their status as social hosts. Indeed, it is irrelevant for the purposes of plaintiff's voluntary undertaking counts whether defendants were acting as social hosts and supplied the alcohol which Elizabeth consumed. Rather, based on allegations of the complaint, defendants' liability arises by virtue of their voluntary assumption of a duty to care for Elizabeth after she became unconscious, irrespective of the circumstances leading up to that point. We do not have a remotely similar situation in the case before the court today. The voluntary undertaking alleged in our case cannot exist without the drinking of alcohol and the intoxication of Mr. Bell. You cannot remove alcohol from the allegations and still have a cause of action. This case falls squarely within the letter of the law and the spirit of the law that social hosts are not liable for alcohol-related injuries. I thought the appellate court noted in a footnote in its opinion that it assumed without deciding that the complaint pled a voluntary undertaking. My question is, isn't that an issue that must be decided in this case, since the court dismissed the complaint under Section 2615? Well, I don't think this court needs to address whether the plaintiff's complaint alleges properly. You said it offered no opinion on whether the complaint adequately pled all of the elements of voluntary undertaking. Did it? Well, I think under Restatement Section 323, it probably misses an element, which is either that the breach of that voluntarily undertaken duty increased the risk of harm, either increased the risk of harm, or that the decedent relied on a voluntary undertaking. The complaint does not allege either of those. So, no, Your Honor, I don't believe that the complaint does state a cause of action for a voluntary undertaking. So would this have to go back to the appellate court for determination on that issue? It could, but I think if this court decides the issue of social host liability, in our favor, the case doesn't need to be decided. It doesn't have to go any further. Once you decide, if you decide that the Hutzels were social hosts and therefore immune from liability, then it doesn't matter what voluntary undertaking the plaintiffs have alleged. Based on the facts alleged in their complaint, my clients would be immune from any liability. Because the underlying complaint makes no allegations that are anywhere similar to Wacolich or Simmons, in which they make no allegations that Mr. Bell became incapacitated somehow, regardless of whether there was alcohol involved, and then my clients undertook a duty to either help him or not help him. In this case, the underlying complaint simply alleges over 50 allegations of alcohol, related activity at my client's home, and that Mr. Bell voluntarily came to that party, voluntarily allegedly drank at that party, and then voluntarily left that party. And that's as far as the allegations go. So as far as we know from the allegations of the complaint, Mr. Bell left that party, subsequently having his car crash. There's no duty alleged that the Hutzels had some sort of duty outside their premises to have followed Mr. Bell. The only allegations against my client are that they voluntarily undertook a duty to monitor the party and prevent alcohol drinking. It's no different than any of these other number of cases that we've seen over the years and that I've cited, in which the parents have allegedly failed to prevent drinking, allowed drinking, a son who was selling beer in the basement party. None of those cases involve a parent that's providing the alcohol. And over the hundred years, you know, this case developed. Yes. Getting back to Justice Freeman's question, isn't it your argument that Wacolich is distinguishable because the court in that case expressly recognized a cause of action based on voluntary undertaking against social hosts? Isn't that your position? I'm sorry, Your Honor, I don't think I understand your question. Our position about Wacolich is that it had nothing to do with social hosts. The voluntary undertaking in Wacolich began after the guest became incapacitated. So in Wacolich, the young woman had become incapacitated, and the court said it doesn't matter how that person became incapacitated. Whether she was drinking alcohol before that didn't matter. Well, let me ask it this way. I think you said to Justice Freeman that we would not have to address, either by sending it back to the appellate court on the pleadings regarding voluntary undertaking, or this court taking a look and see whether or not we decide that the voluntary undertaking was not sufficiently pled. But you said we don't, if we find for you on the social host portion of this that we don't have to address that. I believe we're going to hear differently from Mr. Deutschman. I'm not sure of that, but I think he's going to say that would be an alternative basis in which he could prevail in this case. If this court found that it was sufficiently pled, or if we send it back to the appellate court on that issue, that that would be another sufficient basis. I just want to understand your argument. Are you saying social, you know, we find that social hosts in this case, game over, exempt from liability, even if there was a voluntary undertaking? Yes, yes, under the facts that are pleaded in this complaint, that's exactly our position. That if you find that my clients were social hosts and not liable for alcohol-related injuries, that under the facts pleaded in this case, that a voluntary undertaking does not circumvent that immunity. And it's similar to the Flory case in which a parent allowed her minor underage drinking son and friends to drink at her home, but said, I have a rule, you cannot leave the house if you're intoxicated. Well, two of the kids broke the rule and left and were injured. But the court said, acknowledging that a parent can't detain a guest because it's against the law. You can't detain someone against their will. But regardless of that, the court said that the allegation of a voluntary undertaking is an attempt to circumvent the social host immunity. And that's the case in our case today. The allegations of the complaint today simply allege that my clients allowed a party to go on at their house, tried to prevent the drinking, failed to prevent the drinking, and subsequently someone left and had a car crash and was injured and injured other people. Those are the facts of hundreds of cases that we've had over the years. And the fact is that the immunity of the social host law over those hundred years applies to those facts. Now, if you can come up with a whole new set of facts to allege in this case, where somehow the Hutzels are alleged to have undertaken a duty after Mr. Bell became intoxicated and left the party, then it's a different case. It's a different case in the underlying complaint. There's no allegation that would fit it or no factual scenario pleaded that would fit it within the Wachlich case or the Simmons case where those defendants undertook duties after a guest became incapacitated and then negligently performed that duty to take care of the guest. So that's why I say, yes, it doesn't matter today. If you decide in favor of my clients that they were social hosted immune, then the plaintiff can't plead a voluntary undertaking cause of action, which would circumvent their immunity. Thank you. I guess my final comments would be with regard to the public policy and the problems that may occur with the courts allowing the appellate court's decision to stand and allowing this complaint to stand against my clients. As mentioned in the Charles Court, if you adopt social host liability by allowing this complaint to stand, you'll be faced with determining whether only the injured party, only the injured third party can collect, can recover, whether the intoxicated person, him or herself, should be allowed to recover against a social host. Is there an exception for minors? What if the minor provides the alcohol to another minor in his own home? Should a social host be held liable only when he or she knows the intoxicated person will drink and drive? Or should the host be held liable for all types of alcohol-related injuries? So those are some of the problems that the court in Charles brought up, which will appear and will come to this court later if you allow this complaint to stand against my clients. Thank you. Thank you, Mr. Ryan. Mr. Deutschman. Good morning. May it please the Court. Honorable Justices and Counsel, my name is Jeff Deutschman and I represent the appellee, Janet Bell, the special administrator of the estate of her son, Daniel Bell. This case was dismissed by Judge Hall on a 2-6-15 motion to dismiss. The Second District Appellate Court in Elgin reversed it when they found that the appellate, when they found the complaint stated a cause of action against the parents who were at home, engaged in what was happening in their home, promising to enforce no underage drinking and driving, and ultimately doing nothing despite that voluntary undertaking. We contend that the complaint stated sufficient facts to set forth a cause of action for a voluntary undertaking. Moreover, the complaint sufficiently stated an implied private right of action against the defendants for violating Section 6-16 of the Liquor Control Act. Mr. Deutschman, with regard to the allegations in the complaint that the trial court dismissed, what facts support a voluntary undertaking in the complaint? Justice, the defendants knew that Daniel Bell had consumed alcohol in their home and left to drive his vehicle. They had promised their son in conversations before the party that they were going to monitor and inspect the premises and be around to make sure that no drinking and driving was going to take place. They knew that their son had friends coming over for a party. They knew that their son had had alcohol issues in his past. Was it drinking and driving or just drinking? Drinking and driving. They promised that no one would be allowed to drink and drive, as any good parent would want. What was the voluntary undertaking towards the deceased? The voluntary undertaking is inspecting and monitoring the premises to make sure that no one drove and no one drank. And this was done as to the plaintiff and all other guests that were there. They raised and left open the garage door and interior doors. They turned on the lights for party goers so people could readily come in and out of their house. Danny Bell parked right in the driveway. Mr. Hudson had spoken to my client before he left the party and knew that he was intoxicated. Were there any facts or allegations regarding the reliance by the decedent and what the risk of harm was? No facts like that were pled. The risk of harm facts were pled. There were 56 allegations in the complaint that showed that a cause of action existed. Now, to address the question of Justice Freeman, there were no allegations made by the defendants in their 2-6-15 motion of dismiss in front of Judge Hall that the complaint failed to state a cause of action because there was some deficiency with the facts that were pled. In the four corners, their argument was there was no duty raised. And that was the only argument that Judge Hall heard, and that was the only argument that Judge Hall used as the basis for dismissing the complaint. So our argument is that the defendants in this case, the appellants, waived that cause of action, waived that argument. They didn't make that argument in any of their appellate briefs or before Judge Hall. Do you agree with Mr. Ryan that if we find the defendants in this case exempt under social host liability law that you can't prevail under the voluntary undertaking? I don't. The cases that counsel cited, Richardson, Coulter, Heldt, Zemir, 79, 83, 83, 85, that are not subject to social host liability law. Those are not cases. The law has moved a lot more forward in this area than that. Well, you rely on Simmons, right? Certainly Simmons and certainly Wacoluch. And do you see anything distinguishable in Simmons that in that case the defendants were clearly on notice that the driver was drunk, that was alleged, and nonetheless put him in a car and directed him to leave the club versus the facts of this case, as alleged?  The defendants did know that Danny Bell was drunk. They did have opportunities to see him drinking in their negligent inspection and monitoring of the premises. They did open the garage door and allow people free ingress and egress to the premises. And they did know that Danny Bell was leaving the premises when he was intoxicated. After voluntarily assuming the duty to not allow that, the defendant's liability is not contingent on the status of social host in this case. As this Court stated in Wacoluch, it is irrelevant for purposes of the plaintiff's voluntary undertaking counts whether defendants were acting as social hosts. I have to go back to one thing you said. Was there anything in the allegations that indicated that the defendants were specifically aware that Daniel was consuming alcohol? Yes. It is alleged that they went about the premises, saw people, saw people. I'm saying specifically Daniel Bell. He had conversations with Daniel Bell in an intoxicated state before he left. He was in the basement drinking. Mr. Hutzel saw people drinking. He talked to the guests. Any allegations that the defendants knew or should have known that Daniel was not able to drive his motor vehicle safely? I believe that there are allegations in the complaint that specifically indicate that. Is there anything in this complaint that even alleges that the defendants knew of Daniel's presence at the party? I think there are specific allegations that they spoke with Danny Bell and knew he was intoxicated. Those are in the complaint? I believe they are, Judge. The liability of the defendants arose by virtue of their voluntary assumption of the duty to monitor and inspect to ensure no underage drinking would take place. There are no facts in the complaint alleges that the defendants supplied alcohol. Was the voluntary undertaking that you're alleging as broad as ensuring that no one drove? I think you have different allegations in your complaint dealing with the voluntary undertaking that the parents allegedly spoke to their son and then what happened during the course of the party. The Hutzels told their son and had an agreement between themselves that they were not going to allow any alcohol to be in the premises, drunk by anybody who was under the age of 21, and those people would not be allowed to leave. They would not be allowed to leave in an intoxicated state, drink and drive. But that allegation is not in the complaint that I don't believe, is it? That there was an agreement as to that voluntary undertaking? Justice, I believe that there are allegations that say that. The appellant's narrow reading of Charles in their argument contends that it prohibits the assumption of any duty that relates to alcohol. The defendants didn't supply alcohol, store alcohol, or affirmatively permit its consumption. Therefore, they're not social hosts. This Court has repeatedly reaffirmed that the well-settled common law is that no liability is imposed on a person who gives or sells alcohol to another person that is not a social host. The appellee is not seeking to change this conclusion since it does not apply to these facts. How far does this voluntary undertaking go, counsel? What if these parents knew this boy was going to have a party and somebody's underage and they'd said nothing? Do they have a duty? If the parents stayed in the room and did nothing. Never told their son that they had any care in the world whatsoever. I think that there would be no allegation of voluntary undertaking in this case and likely the complaint would never have been filed. That wasn't the facts here. The facts as related to this case were that there was a voluntary undertaking. They did not want, they wanted, they tried to be good parents. But instead they allowed themselves to try and more than be good parents, to try and be cool parents. They wanted to be involved. They wanted to talk to the kids that were there. They initially. Mr. Deutschman, I still don't understand about the undertaking as to the decedent and the allegations to the decedent. They might have told their own son that they would try to control this party, but what about relying by the decedent on that, those promises, alleged promises? How do we know is there an allegation? How do we know that the decedent even knew? There is no allegation in the complaint that the decedent knew that this agreement took place. Afterwards it came out in the investigation and in the prosecution of Mr. Hutzel in a criminal aspect that these facts existed. And it was only through a careful reading of the criminal transcript that the complaint was fashioned based on those facts and the facts that came out in the criminal case. To follow up on Justice Garmon's question, are there some public policy issues we should be concerned about? Are we sending a message if we accept your rationale that this was a voluntary undertaking and that parents who try to control but don't get the job done are liable? While those who say, have a party, go at it, there's the booze and we're not going to give it to you, and they're free from any liability? I think there are public policy considerations that the court needs to take a hold of here. The allegations, when you have these kind of facts taking place, if my client had been 16 or 17 years old, there would be a statute right on point for a civil private right of action against the Hutzels violating that statute. That's not what happens here. However, for 18, 19, 20-year-old kids, people that are not allowed to drink, there needs to be some avenue if people are not social hosts, but undertake additional duties by their very actions and omissions once they do them, once they undertake to make sure that no drinking will take place in their house, that no access to alcohol in their home will be done, they have to do it in a reasonable fashion. Mr. Deutschman, we had a conversation earlier about the allegations and the complaint. You said you believed that there were specific allegations with respect to what the defendants knew about Daniel Bell's condition and letting him go home. I only quickly looked at him. I don't find any. So I think there's, what I see about Daniel Bell was that he was at the party, that he didn't consume alcohol beforehand. Specific knowledge I don't find. I'm not saying they're not there, but in a quick review I didn't find them. So my question is, when we talk about Simmons, you know, a strip club, allegations that the person, that they knew the specific person was drunk and poured him into a car and knew he was going to drive away, would your position be different if there were no allegations in this complaint about specific knowledge about what the defendants knew about the condition and the fact that Daniel Bell was going to drive away? Seems like a trick question, Justice Thomas. I don't ask trick questions. I just ask questions. My position would not be different. I believe that the allegations in the complaint, that there was, that the Hutzels saw alcohol coming in, that they saw children drinking the alcohol, that there was a strong sense of smell of alcohol. So they undertook, if there was a party with 500 people, just to expand the hypothetical, the fact that they said, we don't want any drinking in this house, we don't want people to drink and drive, if there were no allegations in any complaint, everybody who was at that party, there was a voluntary undertaking as to anybody who came and went at that party all night by these parents. If there were no facts of the voluntary undertaking? No, no. If there were no allegations of specific knowledge as to somebody being drunk and them allowing them to drive home, doesn't matter. As long as they know that there's drinking at this party, there is a voluntary undertaking as to each and every individual is at that party to ensure that they get home safe or whatever. These issues did not come up in this case in front of the trial court or the appellate court. But to answer your question more specifically, there is, I think under 2615, we never got to any real discovery in the case, we never did any depositions. So the reality is, as you know, the plaintiff is entitled to all reasonable inferences in court hearing a motion to dismiss at 2615, and I think any reasonable inference would have allowed the judge to find that when there's all this alcohol in the house, a strong smell of alcohol, they're talking to people who are obviously intoxicated, that indeed intoxicated children are leaving the premises and driving from the premises. But we don't have allegations here, do we, where it's Daniel Bell stumbling out to a car and these parents are saying, go ahead, drive home, you're at your own risk. We don't have that, which would be quite similar to the Simmons case in that regard. I mean, you would at least admit that the allegations in the complaint don't assert that. That's correct. But I think that based on Mr. Hutzel being in the basement of the premises, speaking to party-goers, including Danny Bell, knowing full well that they were intoxicated, and then knowing that those people were going to be leaving the premises in that intoxicated state. So I think the question is the scope of the duty that you're alleging, just so that I'm clear. You're correct. There's not been discovery, we've not moved beyond the complaint. But in terms of duty and the scope of the duty that you're alleging, you're saying that every person who came into that house, that the parents owed a duty to them, to every single one of those people. I'm saying that the parents undertook that duty to monitor and inspect the premises. Every single person who came in the house. As to anybody who drank and drove. How is this distinguishable from Flurry v. Weaver? I actually think that when counsel made use of that Flurry case, it was an opposite to the argument that they were making, that the duty arises only after intoxication. In that case, the duty arose prior to the intoxication. Just like it does in this case. So I think that Flurry is factually more, less distinguishable than counsel indicated. And is, you know, is something that the courts. But in Flurry, didn't the mother or the lady undertake a duty to everyone at the party that says anybody that drinks isn't going to leave? And then these kids left and had this horrendous event? I think in the Hutzel case, this case, the Hutzels did more than that. They did more. They went up and down the stairs, they inspected, they turned on the lights, they talked to people. They did the kind of things that were necessary to further their duty. And did so in a way that showed that they were not doing it in a reasonable fashion. I want to explore how far the duty goes. You mentioned in response to Justice Tice's question that anybody at that party that they knew was drinking. And Justice Kilbright pointed out there is an allegation that they knew that, not that he was drunk, but that Daniel Bell was drinking. So I want to make that clear. But anyway, you said in response to Justice Tice's question, anyone that they knew was drinking at the party, that's who they owed the duty to, right? I think anybody who they had an opportunity to know was drinking and was going to leave the party driving, they had a duty. Would the duty extend to somebody they knew at the party was not drinking and was a passenger in the car with somebody who was drinking? And there was a passenger in my client's vehicle who was killed. That cause of action was mirrored, the same cause of action, it's the same complaint. And Judge Mullen in Lake County found that a cause of action existed under the 2615, the same 2615 motion filed by defendants. Okay. So the duty would extend past who they knew was drinking, but who they allowed to go in the car with somebody who was drinking. That's correct. Would it extend to a victim of a car accident with somebody who left the party who was drinking? I think that that would be a little far afield. I think we are talking about the voluntary undertaking as relates to the people at the party. They were going to monitor and inspect and not allow any drinking and driving to take place. All right. So Bell leaves instead and the tree hits another car and causes an accident and kills someone else. The duty stops there. I think that at some point in time there should be. I mean, these are questions that are eventually going to be answered, right, if we expand the duty. Whether it's reasonably foreseeable that someone drunk can get into an accident, you know where we're going with that. And I don't think that we're really looking to change the law. We're really just clarifying the facts of this case under Simmons, under Wacoluch, and finding that these type of acts have nothing to do with social hosts, but have more to do with the voluntary undertaking. I appreciate the opportunity to be heard. Thank you very much. Thank you, Counsel. Mr. Ryan. I think, Justice Thomas, you're actually right on point with regard to the where does the duty end. And as I prepared for this and worked with colleagues, it became a circular argument that the more you try to separate the voluntary undertaking, in this case, you can't separate it from the alcohol and the intoxication. It just doesn't work. You can't say like you do in Wacoluch that, well, had Daniel Bell become incapacitated and crashed his car for another reason, because he took drugs before he got to the party, or he had a stroke, or he had a seizure. It doesn't work in this case. So the more we argue that, well, the Hustles undertook a duty to prevent alcohol drinking at their home, they breached the duty because the underage drinkers got the booze and drank it, and as a proximate result, Mr. Bell, in this case, went off in a car. In another case, a kid went off with another kid and shot him. In another case, another kid went off in a car. But those cases, the immunity applied. How does it change in this case where because the Hustles attempt and fail to monitor the party, somehow they've upped the ante here and created for themselves a duty that doesn't exist for those who are negligent but never said that they were going to monitor the party and negligently fail to monitor the party, or just stay up in their rooms and don't monitor the party at all. So the problem we have here is that the more arguments you make, it keeps coming back to being an alcohol-related problem, which over the course of 100 years, and then most recently in Charles and Wachlich and Simmons, they said this is a job for the legislature. This is not a job for a case-by-case analysis of a fact-intensive situation for this court to say, yeah, this case, the Hustles are liable. That case, the Brees are not liable. It's just, it's not a, this court is just not equipped to decide the case and set out all the parameters for when a social host is now going to be liable for undertaking, for voluntarily undertaking to monitor their own home in a party where alcohol is present. So I would ask the court to rule in favor of my clients, overrule the appellate court's decision and reinstate the trial court's dismissal of counts one, two, and three of the plaintiff's complaint. Thank you. Thank you. Case number 110724, Bell v. Hustle, is taken under advisement as agenda number 10. Mr. Ryan, Mr. Deutschman, thank you for your arguments today.